1   KEVIN V. RYAN (SBN 118321)
    United States Attorney
2   JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division
3   JONATHAN U. LEE (SBN 148792)
    Assistant United States Attorney
4   450 Golden Gate Avenue, Tenth Floor
    San Francisco, California 94102
5   Telephone:     (415) 436-6909
    Facsimile:     (415) 436-6748
6   Email: jonathan.lee@usdoj.gov
    Attorneys for Defendant UNITED STATES
7
    DAVID A. NOLD, *pro hac vice* (WSBA #19009)
8   NOLD & ASSOCIATES, PLLC
    10500 NE 8th STREET, SUITE 930
9   BELLEVUE, WA 98004
    dnold@washlaw.biz
10  Telephone: (425)289-5555
    Facsimile: (425) 289-6666
11
    MARK C. LAMB (SB #198090)
12  22833 BOTHELL EVERETT HWY, SUITE 218
    BOTHELL, WA 98021
13  Telephone: (425)368-4238
    Attorneys for Plaintiff CURTIS STEELE and B.I.S.
14
    ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
15  W. BARTON WEITZENBERG, ESQ. (SBN 051788)
    MICHAEL D. GREEN, ESQ. (SBN 214142)
16  100 Stony Point Road, Suite 200
    Santa Rosa, California  95401
17  Tel:  (707) 542-5050
    Fax: (707) 542-2589
18  Attorneys for JOHN DEMARTINI,
    as Guardian Ad Litem for R.A.D., and C.M.S.
19

20              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
21                SAN FRANCISCO DIVISION

22  CURTIS LYNN STEELE, an individual,     )   No. C 05-2511 TEH
                                           )
23              Plaintiff,                  )   (Lead Case; Consolidated with *John*
        vs.                                )   *DeMartini, as Guardian Ad Litem for*
24                                          )   *R.A.D. and C.M.S.; and Irene Steele and*
                                           )   *Darryl Steele as Co-guardians Ad Litem for*
25                                          )   *B.I.S.* 05-4399 TEH)
                                           )
26                                          )   **STIPULATION AND** ~~**PROPOSED**~~
    UNITED STATES OF AMERICA,              )   **ORDER APPROVING SETTLEMENT**
27                                          )   **DISBURSEMENT TO PLAINTIFFS**
                Defendant.                  )
28  _____)

1   THE PARTIES, BY AND THROUGH THEIR ATTORNEYS OF RECORD, HEREBY

2   SUBMIT THE FOLLOWING STIPULATION:

3   WHEREAS, on September 21, 2004, Curtis Steele and Tracy DeMartini were involved in

4   a motor vehicle accident with a federal employee;

5   WHEREAS, Tracy DeMartini died on or about September 23, 2004;

6   WHEREAS, following the events of September 21, 2004, Curtis Steele made an

7   administrative claim for tort damages on December 21, 2004;

8   WHEREAS, on June 21, 2005, Curtis Steele filed this lawsuit against the United States of

9   America, alleging damages under the Federal Tort Claims Act;

10   WHEREAS, on or about May 16, 2005, John DeMartini filed administrative claims on

11   behalf of Minors R.A.D. and C.M.S and on or about June 14, 2005 Irene and Darryl Steele filed

12   an administrative claim on behalf of Minor B.I.S;

13   WHEREAS, on or about October 20, 2005, John DeMartini named the United States of

14   America as defendant in his state court, alleging damages under the Federal Tort Claims Act,

15   said action was removed to federal court on October 28, 2005, and Irene Steele and Darryl Steele

16   filed a lawsuit on or about October 24, 2005;

17   WHEREAS, all lawsuits were consolidated into the lead case no. C 05-2511 TEH;

18   WHEREAS, the Court dismissed defendants Lake County Tribal Health Consortium and

19   Thomas Rangel by order dated March 13, 2006;

20   WHEREAS, the parties attended a settlement conference before the Honorable Elizabeth

21   Laporte on June 9, 2006;

22   WHEREAS, the parties reached agreement on the terms of settlement recorded herein on

23   or about June 16, 2006;

24   IT IS HEREBY STIPULATED as follows:

25   1.   By Stipulation and Order Approving Settlement, filed June 28, 2006 and

26   approved by the Court on June 29, 2006 (See Action 05-2511, Docket entry #60), the parties and

27   Nonprofits' Insurance Alliance of California (hereinafter, "NIAC" or "Insurer") agreed to settle

28   all of plaintiffs' claims or potential claims arising from the subject matter of this consolidated

litigation.  The terms and conditions of the settlement agreement, as set forth in the Stipulation and Order Approving Settlement, are incorporated herein by reference as though fully set forth, including but not limited to the full release by plaintiffs of all claims or potential claims.

2.   The purpose of this Stipulation of Settlement and Disbursement Of Funds is to set forth the terms of disbursement of the settlement proceeds, consistent with the Stipulation and Order Approving Settlement previously approved by the Court.  In the Stipulation and Order Approving Settlement, the parties provided that the United States would fund $700,000 in lump sum payments to plaintiffs and NIAC would fund $1,000,000 to a combination of annuity products and lump sum payments to be determined.  The United States will make lump sum payments only; all periodic payments described in this Stipulation shall be made under the terms of annuities contracts to be purchased by NIAC.

This stipulation sets forth how the settlement will be funded and how the settlement funds are to be disbursed.

3.**SETTLEMENT DISBURSEMENT FOR R.A.D.**  For purposes of this agreement, the parties will refer to plaintiff Rickie Ann DeMartini as R.A.D.  The settlement amount of $600,000.00 for Plaintiff John DeMartini on behalf of R.A.D.  will disbursed as follows:

A) **Litigation Costs and Attorneys Fees**: A total of $6,390.56 in litigation costs have been incurred on behalf of plaintiff John DeMartini as Guardian ad litem for R.A.D and C.M.S. R.A.D.'s pro rata share of the total litigation costs equals $3,834.34.  Plaintiff John DeMartini as Guardian Ad Litem for R.A.D. and C.M.S. has a fee agreement with his attorneys Abbey Weitzenberg Warren & Emery and Tibor Major for services provided in pursuing the subject claims on a contingency fee basis for twenty five percent (25%) of the total recovery after reduction of litigation costs. The attorneys fees for the R.A.D. portion of the subject  settlement proceeds is twenty five percent  (25%) of ($600,000.00 less $3,834.34 in litigation costs) or $149,041.41.  Attorneys fees and Litigation Costs will be funded by a check from the United States of America made payable to Abbey Weitzenberg Warren & Emery and Tibor Major in the sum of **$152,875.75.**

B) **Purchase of an Annuity for the Benefit of R.A.D.:** The **$424,520.70** of remaining

settlement proceeds will be paid by Nonprofits Insurance Alliance of California directly to American General Annuity Service Corporation for the purchase an annuity for the benefit of R.A.D as compensation for the settlement of the above entitled action.  The terms of the annuity are detailed in **Exhibit A**.

C) **Deposit into Blocked Account Available to R.A.D. at Age 18:** The remaining **$22,603.54** of the settlement proceeds will be paid by a check from the United States of America made payable to R.A.D. and shall be deposited into an interest bearing federally insured account with the San Francisco Police Credit Union located at 2550 Irving Street, San Francisco, California 94122, which withdrawals will not be permitted until R.A.D. turns eighteen (18) years of age.

    3.1    Payments

In consideration of the release set forth above, NIAC and the United States agree to pay to the individuals named below (the "payees") the sums outlined in this section below:

    3.2    Payments due at the time of settlement as follows:

(A)    The United States will tender a check made payable for attorneys fees and litigation costs to Abbey Weitzenberg Warren & Emery and Tibor Major in the sum of **$152,875.75.**

(B)    Nonprofits Insurance Alliance of California will purchase an annuity for the cost of **$424,520.70**, payable directly to American General Annuity Service Corporation, which an annuity will be for the benefit of R.A.D as compensation for the settlement of the above entitled action.

C)    The United States will tender a check made payable to R.A.D. in the amount of **$22,603.54** which will be delivered to her attorneys of record for deposit in accordance with this stipulation.

3.3     Periodic payments made according to the schedule as follows (the "Periodic Payments"):

3.3a     Payable to RAD:

$1,475.00 per month for the life of RAD, guaranteed 20 years, beginning on November 8, 2012, increasing at 3% compounding annually.  Compounding benefits begin November 8, 2013.  The last guaranteed payment will be made on October 8, 2032.

$25,000.00 guaranteed lump sum payable on November 8, 2019.

$50,000.00 guaranteed lump sum payable on November 8, 2024.

$102,019.73 guaranteed lump sum payable on November 8, 2029.

3.4 Payee's Rights to Payments

Plaintiffs acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any payee, nor shall the plaintiffs or any payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

3.5     Payee's Beneficiary

Any payments to be made after the death of any Payee(s) pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiff(s) to the insurer or the Insurer's Assignee. If no person or entity is so designated by Plaintiff(s), or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer or the Insurer's Assignee. The Designation must be in a form acceptable to the Insurer or the Insurer's Assignee before such

payments are made, but in no event shall the request of the payee be unreasonably withheld or denied.

      3.6     Consent to Qualified Assignment

          3.6a   Plaintiffs acknowledge and agree that the Defendants and/or the Insurer may make a "qualified assignment", within the meaning of Section 130 of the Internal Revenue Code of 1986, as amended, of the Defendants and/or the Insurer's liability to make the Periodic Payments set forth in Section 3.3a to American General Annuity Service Corporation ("the Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Defendants and/or the Insurer (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

          3.6b   Any such assignment, if made, shall be accepted by the plaintiffs without right of rejection and shall completely release and discharge the Defendants and the Insurer from the Periodic Payments obligation assigned to the Assignee. The Plaintiffs recognize that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and Plaintiffs agrees that such assignments shall constitute a full release and discharge of all of the Defendants and Insurer's obligations relative to the Periodic Payments set forth above.

      3.7     Right to Purchase Annuity

The Defendants and Insurer, itself or through American General Annuity Service Corporation ("the Assignee") reserve the right to fund the liability to make the Periodic Payments in Section 3.3a through the purchase of an annuity policy from American General Life Insurance Company.  The Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership.  The assignee may have American General Life Insurance Company mail payments directly to the Payee(s).  The plaintiffs shall be responsible for maintaining a current mailing address for Payee(s) with American General Annuity Service Corporation.

   3.8  Discharge of Obligation

The obligation of the assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee(s) named in Section 2 of this Settlement Agreement.

   4.  **SETTLEMENT DISBURSEMENT FOR C.M.S.**  For purposes of this agreement, the parties will refer to plaintiff Courtney Marie Steele as C.M.S.  The settlement amount of $400,000.00 for Plaintiff John DeMartini on behalf of C.M.S.  will be disbursed as follows:

   A) **Litigation Costs and Attorneys Fees**: A total of $6,390.56 in litigation costs have been incurred on behalf of plaintiff John DeMartini as Guardian ad litem for R.A.D and C.M.S.  C.M.S.'s pro rata share of the total litigation costs equals $2,556.22.   Plaintiff John DeMartini as Guardian Ad Litem for R.A.D. and C.M.S. has a fee agreement with his attorneys Abbey Weitzenberg Warren & Emery and Tibor Major for services provided in pursuing the subject claims on a contingency fee basis for twenty five percent (25%) of the total recovery after reduction of litigation costs. The attorneys fees for C.M.S.'s portion of the subject settlement proceeds is twenty five percent  (25%) of ($400,000.00 less $2,556.22 in litigation costs) or $99,360.95.   Attorneys

fees and Litigation Costs will be funded by a check from the United States of America made payable to Abbey Weitzenberg Warren & Emery and Tibor Major in the sum of **$101,917.16.**

B) **Purchase of an Annuity for the Benefit of C.M.S.: $275,479.30** of the settlement proceeds will be paid by Nonprofits Insurance Alliance of California directly to American General Annuity Service Corporation for the purchase an annuity for the benefit of C.M.S. as compensation for the settlement of the above entitled action.  The terms of the annuity are detailed in **Exhibit B.**

C) **Deposit into Blocked Account Available to C.M.S. at Age 18:** The remaining **$22,603.54** of the settlement proceeds will paid by a check from the United States of America made payable to C.M.S. and shall be deposited into an interest bearing federally insured account with the San Francisco Police Credit Union located at 2550 Irving Street, San Francisco, California 94122, which withdrawals will not be permitted until C.M.S turns eighteen (18) years of age.

4.1     Payments

In consideration of the release set forth above, NIAC and the United States agree to pay to the individuals named below (the "payees") the sums outlined in this section below:

4.2     Payments due at the time of settlement as follows:

(A)     The United States will tender a check made payable for attorneys fees and litigation costs to Abbey Weitzenberg Warren & Emery and Tibor Major in the sum of **$101,917.16.**

(B)     Nonprofits Insurance Alliance of California will purchase an annuity for the cost of **$275,479.30,** payable directly to American General Annuity Service Corporation, which an annuity will be for the benefit of C.M.S. as compensation for the settlement of the above entitled

action.

C)    The United States will tender a check made payable to C.M.S. in the amount of **$22,603.54** which will be delivered to her attorneys of record for deposit in accordance with this stipulation.

4.3    Periodic payments made according to the schedule as follows (the "Periodic Payments"):

4.3b    Payable to CMS:

$760.00 per month for the life of CMS, guaranteed 20 years, beginning on October 10, 2006, increasing at 2% compounding annually.  Compounding benefits begin October 10, 2007.  The last guaranteed payment will be made on September 10, 2026.

$15,000.00 guaranteed lump sum payable on October 10, 2013.

$30,000.00 guaranteed lump sum payable on October 10, 2018.

$92,942.87 guaranteed lump sum payable on October 10, 2023.

4.4 Payee's Rights to Payments

Plaintiffs acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any payee, nor shall the plaintiffs or any payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

4.5    Payee's Beneficiary

Any payments to be made after the death of any Payee(s) pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiff(s) to the insurer or the Insurer's Assignee. If no person or entity is so designated by

Plaintiff(s), or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer or the Insurer's Assignee. The Designation must be in a form acceptable to the Insurer or the Insurer's Assignee before such payments are made, but in no event shall the request of the payee be unreasonably withheld or denied.

    4.6    Consent to Qualified Assignment

    4.6a    Plaintiffs acknowledge and agree that the Defendants and/or the Insurer may make a "qualified assignment", within the meaning of Section 130 of the Internal Revenue Code of 1986, as amended, of the Defendants and/or the Insurer's liability to make the Periodic Payments set forth in Section 4.3b to American General Annuity Service Corporation ("the Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Defendants and/or the Insurer (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

    4.6b    Any such assignment, if made, shall be accepted by the plaintiffs without right of rejection and shall completely release and discharge the Defendants and the Insurer from the Periodic Payments obligation assigned to the Assignee. The Plaintiffs recognize that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and Plaintiffs agrees that

such assignments shall constitute a full release and discharge of all of the Defendants and Insurer's obligations relative to the Periodic Payments set forth above.

4.7     Right to Purchase Annuity

The Defendants and Insurer, itself or through American General Annuity Service Corporation ("the Assignee") reserve the right to fund the liability to make the Periodic Payments in Section 4.3b through the purchase of an annuity policy from American General Life Insurance Company.  The Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership.  The assignee may have American General Life Insurance Company mail payments directly to the Payee(s).  The plaintiffs shall be responsible for maintaining a current mailing address for Payee(s) with American General Annuity Service Corporation.

4.8     Discharge of Obligation

The obligation of the assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee(s) named in Section 2 of this Settlement Agreement.

5.     **SETTLEMENT DISBURSEMENTS FOR B.I.S.**  The settlement amount of $400,000.00 for Plaintiffs Irene Steele and Darryl Steele on behalf of B.I.S. will be disbursed as follows:

A)     **Litigation Costs and Attorney Fees:** A total of $2,354.60 in litigation costs have been incurred on behalf of Plaintiffs Irene Steele and Darryl Steele on behalf of B.I.S. Plaintiffs Irene Steele and Darryl Steele as co-guardians ad litem for B.I.S. have a fee agreement with their attorney Nold & Associates for services provided in pursuing the subject claims on a contingency fee basis for twenty-five percent (25%) of the total recovery after reduction of litigation

costs.  The attorney fees for B.I.S.' portion of the subject settlement proceeds is twenty five percent (25%) of ($400,000.00 less $2,354.60 in litigation costs) or $99,411.35.  Attorney fees and Litigation Costs will be funded by a check from the United States of America made payable to Nold & Associates, PLLC in the sum of **$101,765.95.**

B)     **Purchase of an Annuity for the Benefit of B.I.S.: $200,000.00** of the settlement proceeds will be paid by Nonprofits Insurance Alliance of California directly to EPS Settlements Group, Inc. for the purchase of an annuity for the benefit of B.I.S. as compensation for the settlement of the above entitled action.  The terms of the annuity are detailed in **Exhibit C.**

C)     **Deposit into Trust Account Available to B.I.S. at Age 18:** The remaining **$98,234.05** of the settlement proceeds will be paid by a check from the United States of America made payable to B.I.S.  Marvin Steele, as guardian of B.I.S. will serve as Trustee over this account at the First National Bank of Montana, Libby, Montana.

5.1    Payments

In consideration of the release set forth above, NIAC and the United States agree to pay to the individuals named below (the "payees") the sums outlined in this section below:

5.2    Payments due at the time of settlement are as follows:

(A)     The United States will tender a check made payable for attorneys fees and litigation costs to Nold & Associates in the sum of **$101,765.95.**

(B)    Nonprofits Insurance Alliance of California will purchase an annuity for the cost of **$200,000.00**, payable directly to EPS Settlements Group, Inc. which annuity will be for the benefit of B.I.S. as compensation for the settlement of the above entitled action.

(C)     The United States will tender a check made payable to B.I.S. in the amount of **$98,234.05** which will be delivered to her attorneys of records for deposit in accordance with this stipulation.

5.3     Periodic payments made according to the schedule as follows (the "Periodic Payments:):

5.3c     Payable to B.I.S.:

$100,000.00 guaranteed lump sum payable on November 8, 2020

$150,000.00 guaranteed lump sum payable on November 8, 2026

$397,925.00 guaranteed lump sum payable on November 8, 2029

5.4 Payee's Rights to Payments

Plaintiffs acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any payee, nor shall the plaintiffs or any payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

5.5     Payee's Beneficiary

Any payments to be made after the death of any Payee(s) pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiff(s) to the insurer or the Insurer's Assignee. If no person or entity is so designated by Plaintiff(s), or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer or the Insurer's Assignee. The Designation must be in a form acceptable to the Insurer or the Insurer's Assignee before such payments are made, but in no event shall the request of the payee be unreasonably withheld or

1    denied.

2          5.6    Consent to Qualified Assignment

3                 5.6a   Plaintiffs acknowledge and agree that the Defendants and/or the

4                        Insurer may make a "qualified assignment", within the meaning of

5                        Section 130 of the Internal Revenue Code of 1986, as amended, of

6                        the Defendants and/or the Insurer's liability to make the Periodic

7                        Payments set forth in Section 5.3a to Prudential Assigned Settlement

8                        Servcies Corporation ("the Assignee").  The Assignee's obligation

9                        for payment of the Periodic Payments shall be no greater than that of

10                       the Defendants and/or the Insurer (whether by judgment or

11                       agreement) immediately preceding the assignment of the Periodic

12                       Payments obligation.

13                5.6b   Any such assignment, if made, shall be accepted by the plaintiffs

14                       without right of rejection and shall completely release and discharge

15                       the Defendants and the Insurer from the Periodic Payments obligation

16                       assigned to the Assignee.  The Plaintiffs recognize that, in the event

17                       of such an assignment, the Assignee shall be the sole obligor with

18                       respect to the Periodic Payments obligation, and Plaintiffs agrees that

19                       such assignments shall constitute a full release and discharge of all

20                       of the Defendants and Insurer's obligations relative to the Periodic

21                       Payments set forth above.

22         5.7    Right to Purchase Annuity

23                The Defendants and Insurer, itself or through Prudential Assigned Settlement Services

Corporation ("the Assignee") reserve the right to fund the liability to make the Periodic Payments in Section 5.3a through the purchase of an annuity policy from The Prudential Insurance Company of America.  The Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership.  The assignee may have The Prudential Insurance Company of America mail payments directly to the Payee(s).  The plaintiffs shall be responsible for maintaining a current mailing address for Payee(s) with Prudential Assigned Settlement Services Corporation.

   5.8  Discharge of Obligation

   The obligation of the assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee(s) named in Section 5 of this Settlement Agreement.

   6.  **<u>SETTLEMENT DISBURSEMENTS FOR CURTIS STEELE.</u>**  The settlement amount of $300,000.00 for Plaintiff Curtis Steele will be disbursed as follows:

   A)  **Litigation Costs and Attorney Fees:**  A total of $7,798.97 in litigation costs have been incurred on behalf of Plaintiff Curtis Steele.    Plaintiff Curtis Steele has a fee agreement with his attorney Nold & Associates for services provided in pursuing the subject claims on a contingency fee basis for twenty-five percent (25%) of the total recovery after reduction of litigation costs.  The attorney fees for Curtis Steele's portion of the subject settlement proceeds is twenty five percent (25%) of ($300,000.00 less $7,798.97 in litigation costs) or $73,050.26. Attorney fees and Litigation Costs will be funded by a check from the United States of America made payable to Nold & Associates, PLLC in the sum of **$80,849.22.**

   B)  **Medi-Cal Lien:**  Medi-Cal has asserted a lien against the settlement proceeds of Plaintiff Curtis Steele in the amount of $**108,433.09.**

   C)  **Purchase of an Annuity for the Benefit of Curtis Steele: $100,000.00** of

the settlement proceeds will be paid by Nonprofits Insurance Alliance of California directly to EPS Settlements Group, Inc. for the purchase of an annuity for the benefit of Curtis Steele as compensation for the settlement of the above entitled action.  The terms of the annuity are detailed in **Exhibit D.**

      D)     **Deposit into Bank Account Belonging to Plaintiff Curtis Steele:** The remaining **$10,717.69** of the settlement proceeds will be paid by a check from the United States of America made payable to Curtis Steele and shall be deposited into an interest bearing federally insured account with the Bank of America located at 500 Main Street in Lakeport, California.

      6.1    Payments

      In consideration of the release set forth above, NIAC and the United States agree to pay to the individuals named below (the "payees") the sums outlined in this section below:

      6.2    Payments due at the time of settlement are as follows:

            (A)    The United States will tender a check made payable for attorneys fees and litigation costs to Nold & Associates in the sum of **$80,849.22.**

            (B)    Nonprofits Insurance Alliance of California will purchase an annuity for the cost of **$100,000.00**, payable directly to EPS Settlements Group, Inc., which annuity will be for the benefit of Curtis Steele as compensation for the settlement of the above entitled action.

            (C)    The United States will tender a check made payable to Medi-Cal in the amount of **$108,433.09** which will be delivered to his attorneys of records for disbursement in accordance with this stipulation.

            (D)    The United States will tender a check made payable to Curtis Steele in the amount of **$10,717.69** which will be delivered to his attorneys

of records for deposit in accordance with this stipulation.

6.3    Periodic payments made according to the schedule as follows (the "Periodic Payments:):

6.3d    Payable to Curtis Steele.:

$795.00 per month, guaranteed for 15 years, beginning on September 1, 2006

6.4 Payee's Rights to Payments

Plaintiffs acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any payee, nor shall the plaintiffs or any payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

6.5    Payee's Beneficiary

Any payments to be made after the death of any Payee(s) pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiff(s) to the insurer or the Insurer's Assignee. If no person or entity is so designated by Plaintiff(s), or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer or the Insurer's Assignee. The Designation must be in a form acceptable to the Insurer or the Insurer's Assignee before such payments are made, but in no event shall the request of the payee be unreasonably withheld or denied.

6.6    Consent to Qualified Assignment

6.6a    Plaintiffs acknowledge and agree that the Defendants and/or the Insurer may make a "qualified assignment", within the meaning of

Section 130 of the Internal Revenue Code of 1986, as amended, of the Defendants and/or the Insurer's liability to make the Periodic Payments set forth in Section 6.3a to American General Annuity Service Corporation ("the Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Defendants and/or the Insurer (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

6.6b    Any such assignment, if made, shall be accepted by the plaintiffs without right of rejection and shall completely release and discharge the Defendants and the Insurer from the Periodic Payments obligation assigned to the Assignee. The Plaintiffs recognize that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and Plaintiffs agrees that such assignments shall constitute a full release and discharge of all of the Defendants and Insurer's obligations relative to the Periodic Payments set forth above.

6.7    Right to Purchase Annuity

The Defendants and Insurer, itself or through American General Annuity Service Corporation ("the Assignee") reserve the right to fund the liability to make the Periodic Payments in Section 6.3a through the purchase of an annuity policy from American General Life Insurance Company. The Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. The assignee may have American General Life Insurance Company mail payments

directly to the Payee(s). The plaintiffs shall be responsible for maintaining a current mailing address for Payee(s) with American General Annuity Service Corporation.

6.8    Discharge of Obligation

The obligation of the assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee(s) named in Section 6 of this Settlement Agreement.

7.    The parties agree that the district court shall retain jurisdiction over this matter for the purposes of resolving any dispute alleging a breach of this Stipulation and Agreement.

8.    Each party acknowledges that they have been represented by and have relied upon independent counsel in negotiating, preparing and entering into this Stipulation and Agreement and that they have had the contents of this Stipulation and Agreement fully explained by counsel and that they are fully aware of and understand all of the terms of the agreement and the legal consequences thereof.  It is further acknowledged that the parties have mutually participated in the drafting of this Stipulation and Agreement and it is agreed that no provision herein shall be construed against any party hereto by virtue of the drafting of this Stipulation and Agreement.

9.    If any provision of this Stipulation and Agreement shall be held invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.  This instrument together with the Stipulation and Order Approving Settlement, filed June 28, 2006 and approved by the Court on June 29, 2006 (See Action 05-2511, Docket entry #60), which is

incorporated herein by reference, shall constitute the entire agreement between the parties. It is expressly understood and agreed that this agreement has been freely and voluntarily entered into by the parties hereto with the advice of counsel, who have explained the legal effect of this agreement. The parties further acknowledge that no warranties or representations have been made on any subject other than as set forth in this agreement.

10.    The parties agree that, should any dispute arise with respect to the implementation of the terms of this Agreement, Plaintiffs shall not seek to rescind the Agreement and pursue any of the original causes of action. Plaintiffs' sole remedy in such a dispute is an action to enforce the Agreement in district court. This settlement agreement may be signed in counterparts.

11.    The parties further agree that the filing of this executed Stipulation and Agreement shall notify the Court of the parties' agreement to vacate all pending discovery, motion hearing dates, settlement or pretrial deadlines or trial date associated with this litigation, but this provision does not indicate any agreement to dismiss NIAC's complaint-in-intervention.

12.    The parties to this stipulation request that the Court sign the proposed order approving the disbursement of funds in settlement and the compromise of the minor plaintiff's settlements.

13.    Tibor Major has asserted a lien against the attorneys fees portion of the settlement proceeds of B.I.S. That lien is disputed. David Nold has agreed to deposit the sum of $13,600 into his law firm trust account pending the decision of this court regarding such lien. In the event that no action is taken to enforce such lien by

1    September 1, 2006 then such amount may be removed from the trust account and the

2    lien shall be of no further force or effect.

3    14.    The parties request that the Court, on the basis of this stipulation and the attached

4    supporting materials and documentation of disbursements to plaintiffs in the future,

5

6    approve the settlement without a hearing.

7    **SO STIPULATED.**

8    DATED: July 28, 2006                    /s/
9                                            Curtis Steele, Plaintiff

10   DATED: July 28, 2006                    /s/
11                                           Irene Steele, Plaintiff Guardian Ad Litem
                                             on behalf of B.I.S.
12
13   DATED: July 28, 2006                    /s/
                                             Darryl Steele, Plaintiff Guardian Ad Litem
14                                           on behalf of B.I.S.

15   DATED: July 28, 2006                    NOLD & ASSOCIATES, PLLC

16                                           /s/

17
18                                           David A. Nold, *pro hac vice,* WSBA #19009
                                             Attorney for Plaintiffs Curtis Steele and Irene and
19                                           Darryl Steele as Co-Guardians ad Litem for B.I.S.

20   DATED: July 28, 2006                    LAW OFFICES OF MARK C. LAMB
21
22                                           /s/

23                                           Mark C. Lamb, Esq.
                                             Attorney for Plaintiffs Curtis Steele and Irene and
24                                           Darryl Steele as Co-Guardians ad Litem for B.I.S.

25

26   DATED: July 27, 2006                    /s/

27                                           John DeMartini, Plaintiff Guardian Ad Litem for
28                                           R.A.D. and C.M.S.

STIPULATION OF SETTLEMENT AND DISBURSEMENT TO PLAINTIFFS; ORDER
Case No. C 05-2511 TEH            -21-

1

2

3

DATED: July 27, 2006

4                                              /s/

5                                   Plaintiff John DeMartini, As Personal Representative
                                    of the Estate of Tracy DeMartini and/or Successor-In-
6                                   Interest to Tracy DeMartini

7   DATED: July 27, 2006           ABBEY WEITZENBERG WARREN & EMERY

8
                                               /s/
9                                   Michael D. Green, Esq.
10                                  Attorney for Plaintiff John DeMartini as Guardian ad
                                    Litem for R.A.D. and C.M.S
11

12  DATED: July 27, 2006           LAW OFFICES OF TIBOR E. MAJOR

13                                             /s/

14
                                    Tibor E. Major, Esq.
15                                  Attorney for Plaintiff John DeMartini as Guardian ad
                                    Litem for R.A.D. and C.M.S
16

17
    DATED: July 31, 2006           CLAPP, MORONEY, BELLAGAMBA &
18                                  VUCINICH

19                                             /s/

20                                  Christopher J. Beeman, Esq.
                                    Erica Berterello, Esq.
21                                  Attorneys for Defendant UNITED STATES

22

23  DATED: July 28, 2006           HAIGHT BROWN & BONESTEEL LLP

24

25                                             /s/
                                    Robert N. Schiff
26                                  Attorneys   for   NONPROFITS'   INSURANCE
                                    ALLIANCE OF CALIFORNIA
27

28

DATED: July 28, 2006                    KEVIN V. RYAN
                                        United States Attorney

                                        _____/s/_____
                                        Jonathan U. Lee
                                        Assistant United States Attorney
                                        Attorneys for Defendant UNITED STATES


**PURSUANT TO STIPULATION, IT IS SO ORDERED:**


DATED: _____08/02/06_____    _____
                                        The Honorable Thelton E. Henderson
                                        UNITED STATES DISTRICT JUDGE