IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS LYNN STEELE,<br><br>             Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>             Defendant.<br><br>NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA,<br><br>             Plaintiff-in-Intervention,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>             Defendant-in-Intervention. | NO. C05-2511 TEH<br><br><u>ORDER GRANTING INTERVENOR NIAC'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION FOR SUMMARY JUDGMENT BROUGHT BY DEFENDANT UNITED STATES</u> |

This matter came before the Court on November 27, 2006, on motions for summary judgment brought by Intervenor Nonprofits' Insurance Alliance of California ("NIAC") and Defendant United States of America on NIAC's complaint-in-intervention. After carefully considering the parties' written and oral arguments, the evidence submitted by the parties, and governing law, the Court now GRANTS NIAC's motion and DENIES the motion brought by the United States for the reasons discussed below.

**BACKGROUND**

This damages action, as well as two related cases, arose from a September 21, 2004 collision between a motorcycle and a van. Plaintiff Curtis Steele, who was driving the motorcycle, suffered injuries in the collision. His partner and passenger, Tracy DeMartini,

was killed. Thomas Rangel, who was then an employee of the Lake County Tribal Health Consortium ("Consortium"), was driving the van, which the Consortium was leasing from the United States, on official business at the time of the accident. The Consortium is a California corporation under contract with the Indian Health Service, an agency within the United States Department of Health and Human Services.

Steele and DeMartini's three minor children, through guardians ad litem, filed three separate negligence actions naming Rangel, the Consortium, and the United States as defendants. The parties stipulated to dismissal of one of the three actions, and Plaintiffs agreed to dismiss all claims against the Consortium. Pursuant to the Federal Tort Claims Act, this Court subsequently dismissed Rangel because he was acting in the scope of his employment at the time of the collision, leaving the United States as the sole defendant in the two remaining cases.

The United States sought defense and indemnity from NIAC, the Consortium's insurance carrier. NIAC contended that the United States was not an insured under the relevant policy, but the company nonetheless agreed to appoint counsel to defend the United States and to make the $1,000,000 policy limit available for settlement. However, NIAC explicitly reserved the right to seek reimbursement from the United States for defense fees and costs and any indemnity paid on behalf of the United States.

In June 2006, Plaintiffs and the United States settled all claims for $1,700,000, with the United States to contribute $700,000 and NIAC to contribute $1,000,000, subject to NIAC's right to seek reimbursement from the United States. The Court approved the parties' stipulation regarding settlement on June 29, 2006, and signed the parties' stipulation to dismiss both cases, except for NIAC's claim for reimbursement, on December 21, 2006.

After the Court granted NIAC's unopposed motion to intervene, NIAC filed its complaint-in-intervention, which seeks reimbursement of the $1,000,000 paid to Plaintiffs and $43,540.17 incurred in defending the United States in this action. The United States and NIAC filed cross-motions for summary judgment on NIAC's claims. The material facts are undisputed, and the parties' only dispute is a legal one: namely, whether the Consortium's

insurance policy with NIAC covers the United States as an insured based on the liability of the United States for Rangel's conduct at the time of the September 21, 2004 collision.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322-23. However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.

**DISCUSSION**

**I.   Whether the United States Is an "Insured" Under NIAC's Policy**

The parties agree that NIAC Policy Number 2004-07698-NPO applies to the incident in question. Section II.A of that policy's Business Auto Coverage Form provides that NIAC "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or

3

'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Lee Decl. Ex. 19 at NI 0661. The only dispute in this case centers around who is an "insured." NIAC does not dispute that all other requirements for coverage, including that the van involved in the accident was a covered "auto," were satisfied.

Section II.A.1 of the policy defines the following as "insureds":

    a.    You for any covered "auto."

    b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow, except:

        (1)    The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

        (2)    Your employee if the covered "auto" is owned by that employee or a member of his or her household.

        (3)    Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

        (4)    Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto."

        (5)    A partner of yours for a covered "auto" owned by him or her or a member of his or her household.

    c.    Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an "insured" but only to the extent of that liability.

*Id.* "You" in this context refers to the Consortium, the entity that purchased the insurance policy from NIAC.

The policy did not contain an endorsement that would have added as an "insured" the named lessor of a "'leased auto' designated or described in the Schedule" of covered autos. Lee Decl. Ex. 6 ("Additional Insured – Lessor" endorsement CA2001 (1-87)); *id.* Ex. 19 at NI 0648, 0651 (listing forms and endorsements attached to the policy and not listing form CA2001). This is irrelevant in this case, however, as there is no evidence that the Consortium ever designated the van in question as a "leased auto."

4

It is undisputed that Rangel qualifies as an "insured" under the above policy and that the United States was liable for Rangel's conduct during the course of his employment with the Consortium. Consequently, the United States asserts that it qualifies as an "insured" under paragraph (c). NIAC, on the other hand, contends that the United States is not covered under paragraph (c) because it is "otherwise excluded under paragraph b" as the owner of the van. In essence, the parties' dispute boils down to whether "otherwise excluded under paragraph b" refers to individuals or entities who meet one of the criteria in subparagraphs (b)(1) through (b)(5), in which case the United States would be excluded, or whether the phrase refers only to such individuals or entities who were, under the first clause of paragraph (b), also using the covered auto with the Consortium's permission, in which case the United States would not be excluded. The parties do not dispute that the United States was not "using" the van, as that term is contemplated by the policy terms.

Both parties acknowledge that an insurance policy is subject to basic rules of contract interpretation. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). Moreover, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). The Court should interpret the policy to "give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. The written language of the policy "is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code §1638. In addition, "[t]he whole of [the policy] is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Policy language will be considered ambiguous only if it is capable of two or more reasonable interpretations. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993). In determining whether a provision is ambiguous, the language must be interpreted in the context of the policy as a whole and cannot be found to be ambiguous only in the abstract. *Bank of the West*, 2 Cal. 4th at 1265.

An insurance policy "is written in two essential parts: the insuring agreement, which states the risk or risks covered by the policy, and the exclusion clauses, which remove

5

1  coverage for risks that would otherwise fall within the insuring clause." *Waller*, 11 Cal. 4th
2  at 16. "[A]lthough exclusions are construed narrowly and must be proven by the insurer, the
3  burden is on the insured to bring the claim within the basic scope of coverage, and (unlike
4  exclusions) courts will not indulge in a forced construction of the policy's insuring clause to
5  bring a claim within the policy's coverage." *Id.* (citation omitted); *see also State Farm Mut.*
6  *Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 201-02 (1973) (once it is determined that an
7  incident falls within a policy's insurance clause, the insurance company bears the burden of
8  demonstrating that the incident is excluded by "clear and unmistakable language"); *Crane v.*
9  *State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971) (ambiguities in exclusions are
10 construed against the insurer). The disagreement in this case is over the basic scope of
11 coverage, contained in Section II.A of the policy in question, and not the exclusions,
12 contained in Section II.B. Thus, the United States bears the burden of demonstrating that its
13 claim for coverage falls within the policy's scope.
14      Upon initial review, the United States appears to have the stronger argument based on
15 a more straightforward interpretation of the disputed language in Section II.A. Paragraph (c)
16 of that section excludes from coverage those who are "otherwise excluded under paragraph
17 b." Paragraph (b), in turn, excludes from coverage those who are using a covered auto with
18 the Consortium's permission *and* who also fall into one of the five enumerated categories in
19 paragraphs (b)(1) through (b)(5). That is, the plain language of paragraph (b) does not
20 appear to exclude a person or entity, such as the United States in this case, who falls into one
21 of the five enumerated categories but who is not using a covered auto with the Consortium's
22 permission.
23      However, this Court cannot consider the "otherwise excluded under paragraph b"
24 language in the abstract and must instead construe the provision in context with the policy as
25 a whole. When it does so, the Court finds that it must agree with NIAC's interpretation of
26 the policy because, read in context, the disputed phrase can only be reasonably interpreted to
27 mean "otherwise excluded under one of the five subparagraphs of paragraph b." To conclude
28 otherwise would render the phrase meaningless, since the Court cannot imagine a situation in

6

1 which a person or entity would be vicariously liable for the conduct of an insured while also
2 using a covered auto with the Consortium's permission.
3     At oral argument, the Court asked the United States to point to an example of such a
4 situation, and counsel proposed the following hypothetical:

> Let's say that . . . the Consortium called Clinic "X" [a]cross town and asked to borrow a vehicle from them. If Clinic "X's" employee, while driving that vehicle at the request of the Consortium over to the Consortium's property, had an accident and injured some people, caused personal injuries, then I think Clinic "X" would have an argument as to being insured under this policy because it is vicariously liable for the conduct of its own employees.
>
> It is also a permissive user. The employer is a permissive user because it was all instigated at the request of the Consortium. So you would have to look at the language of subpart (b), and there the owner's employee was operating the borrowed vehicle, and I think that gives effect to provision (b)(1), the provision cited here.

12 Nov. 27, 2006 Hr'g Tr. at 12:7-20. The Court is not persuaded by this hypothetical because
13 it would have been the clinic's employee, and not the clinic itself, that was using the vehicle
14 at the time of the accident. Consequently, while the employee would have been a permissive
15 user, the clinic would not have been, and the proffered hypothetical therefore fails to present
16 a case where someone is both a permissive user of a vehicle and vicariously liable for the
17 driver's conduct.

18     Moreover, the United States would not benefit even if the Court were to accept the
19 presented hypothetical. Finding the clinic in the hypothetical to be a permissive user would
20 contradict the argument by the United States that the United States was not "using" the van at
21 the time of the collision. If the clinic in the hypothetical would have been considered a
22 permissive user because it loaned a vehicle to the Consortium at the Consortium's request,
23 then the United States would be a permissive user in this case as well. As a result, the United
24 States would be excluded from coverage even under the interpretation of the policy set forth
25 by the United States.

26     The United States next argues that NIAC's interpretation would render the policy an
27 illusory contract because NIAC would never be subject to liability. The United States
28 reaches this conclusion by positing that: (a) the Consortium cannot be held liable based on

7

1  sovereign immunity; (b) the United States is the proper defendant in cases alleging liability
2  for the Consortium's operations; and (c) under NIAC's interpretation, the United States can
3  never be an insured under the policy.  However, as NIAC acknowledges, the United States
4  would have indisputably qualified as an insured under the policy if the van being driven by
5  Rangel was owned by the Consortium rather than owned by the United States.  Similarly,
6  NIAC does not dispute that the policy would cover valid claims against Rangel, who could
7  have been sued personally had he been driving the van with the Consortium's permission but
8  not acting in the scope of his employment.  Thus, the policy as interpreted above is not an
9  illusory contract.

10  Finally, the United States contends that effect must be given to the undisputed fact
11 that NIAC did not know that the Consortium used vehicles owned by other entities, including
12 the United States, until after this lawsuit commenced.  This fact, however, is irrelevant
13 because the Court has already explained how the disputed policy language, when read in
14 context with the remainder of the policy, must be construed in NIAC's favor.  Moreover,
15 even where the language of the policy yields no clear interpretation, courts must construe the
16 language "in conformity with *what the insurer believed the insured understood* thereby at the
17 time of formation and, if it remains problematic, in the sense that satisfies *the insured's*
18 objectively reasonable expectations."  *Buss v. Superior Court*, 16 Cal. 4th 35, 44-45 (1997)
19 (citations omitted) (emphasis added).  Here, there is no evidence that the insured – i.e., the
20 Consortium – did not know that the van was owned by the United States.  Nor, in any event,
21 does the ownership of the van go to the pertinent question of whether the Consortium
22 understood or expected that the United States would be an insured for accidents for which the
23 United States was vicariously liable and involving vehicles owned by the United States and
24 leased to the Consortium.

25  In sum, the Court concludes that NIAC's interpretation of the policy must prevail
26 based on a reading of the policy as a whole.  Construing the disputed language in favor of the
27 United States would render that portion of the policy meaningless, in contravention of
28 California rules of contract interpretation.  Accordingly, the Court GRANTS NIAC's motion

8

for summary judgment on its claim for reimbursement and DENIES the motion for summary judgment brought by the United States.

## II.     NIAC's Request for Attorneys' Fees

The United States does not dispute that, if NIAC were to prevail on the merits of its claim for reimbursement, NIAC would also be entitled to the $43,540.17 in attorneys' fees it seeks for defending the United States in the underlying lawsuits. Because the Court has found NIAC to be entitled to summary judgment on its reimbursement claim, the Court now therefore grants NIAC's unopposed request for attorneys' fees.

## CONCLUSION

For all of the above reasons, NIAC's motion for summary judgment on its complaint-in-intervention is hereby GRANTED, and the motion for summary judgment brought by the United States is DENIED. The United States shall reimburse NIAC for the $1,000,000 paid to Plaintiffs in settling Plaintiffs' claims, and the United States shall also pay NIAC $43,540.17 for attorneys' fees incurred in defending the United States in the underlying lawsuits. The United States shall pay NIAC these amounts within thirty calendar days of the date of this order. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  02/02/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT